[Cite as *State v. Spivey*, 2021-Ohio-2598.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-200125 |
| | | C-200126 |
| Plaintiff-Appellee, | | C-200127 |
| | : | C-200128 |
| vs. | | C-200129 |
| | : | TRIAL NOS. C-20CRB-1352A |
| NICOLE SPIVEY, | | C-20CRB-1352B |
| | | C-20CRB-1352C |
| Defendant-Appellant. | : | C-20CRB-1352D |
| | | C-20CRB-1352E |
| | : | *O P I N I O N.* |

Criminal Appeals From:   Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed in C-200128 and C-200129; Affirmed in Part, Sentences Vacated and Cause Remanded in C-200126 and C-200127; Appeal Dismissed in C-200125

Date of Judgment Entry on Appeal: July 30, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1}    Defendant-appellant Nicole Spivey[1] ("Ball") appeals her convictions for theft, obstructing official business, falsification, and two counts of child endangerment.  In two assignments of error, she argues that her convictions for child endangerment were not supported by sufficient evidence and were against the manifest weight of the evidence and that the trial court erred in imposing separate sentences for the offenses of obstructing official business and falsification because they are allied offenses of similar import.

{¶2}    Following our review of the record, we find that Ball's convictions for child endangerment were supported by both the sufficiency and the weight of the evidence.  But because the offenses of obstructing official business and falsification were allied offenses of similar import, we hold that the trial court erred in imposing sentences on both offenses, and we remand for resentencing.  We dismiss the appeal numbered C-200125, in which Ball has appealed her theft conviction, because she has not assigned any error with respect to that conviction.

*Factual and Procedural Background*

{¶3}    On January 19, 2020, Ball was stopped when she was leaving a Target store by a security officer for the suspected theft of two pairs of headphones.  After being stopped, Ball informed the security officer that her two grandchildren were in her vehicle in the store's parking lot.  The security officer called the police twice, first regarding Ball's shoplifting and again to alert them to the children's presence in the

---

[1] Spivey was also referred to as Nicole Ball throughout these proceedings. Because counsel referred to her as "Ball" at oral argument, we will refer to her as "Ball" throughout this opinion.

car. When speaking with a police officer who responded to the scene, Ball refused to provide identification and provided an incorrect social security number. Ball was subsequently charged with theft, obstruction of official business, falsification, and two counts of child endangerment.

{¶4} At a bench trial, the state presented testimony from Target security officer Nicholas Roberts. Roberts testified that he observed Ball as she shopped in the store, placed two pairs of headphones and two food items in her shopping basket, and checked out utilizing the store's self-checkout system. After witnessing Ball place the headphones in a bag without scanning them, Roberts stopped Ball as she was exiting from the store. He testified that Ball had all four items in her possession, but her receipt documented that she only paid for the two food items. Roberts took Ball to his office for questioning, where she informed him that she needed to leave because she had two children in her car in the parking lot. Roberts was concerned because it was extremely cold that day, and Ball told him that the children were six years old and three years old and that her vehicle was not running. He called 911 to report the children in the locked car. Roberts estimated that Ball had been in the store for approximately ten to 15 minutes before he stopped her, and that she was in his office for an additional five minutes before he called 911.

{¶5} Colerain Township police officer Anthony Hatcher testified that he responded to a nonemergency dispatch regarding a shoplifter at Target, and that when he was arriving on the scene he received an update regarding an additional call from the store about two children inside a vehicle in the parking lot. Officer Hatcher estimated that he arrived in the Target parking lot approximately five to ten minutes after receiving the nonemergency dispatch. He met Roberts in the parking lot, where

Roberts provided him with a description of Ball's vehicle. Officer Hatcher approached Ball's vehicle, which was not running, and he saw two children in the back seat. The children were wearing winter coats, but he did not see hats on them. He additionally observed a plastic bag over the front-passenger window and frost on the windows. Officer Hatcher testified that the outside temperature was approximately 15 degrees, and that it was one of the coldest days that winter.

{¶6} After additional officers arrived on scene to assist with the children, Officer Hatcher entered the store to speak with Ball. He asked her to provide identification, and Ball responded that she did not have any. He then asked Ball to provide her social security number, but the number Ball provided was incorrect and matched a male. Ball subsequently provided at least four more incorrect social security numbers to Officer Hatcher. Officer Hatcher ultimately ran a search on his mobile computer with the address that Ball had earlier provided to Roberts, and utilizing that address he obtained information for both Ball and someone named "Nicole Whitaker" who had several open warrants. Ball told the officer that she did not know anyone named Nicole Whitaker.

{¶7} Ball testified on her own behalf, stating that "Whitaker" was her maiden name and that she had told this to Officer Hatcher. She explained that on the day of these offenses she had been in Target with her grandchildren. After they finished shopping and returned to her car, she realized that she had forgotten to purchase something. She left her grandchildren in her car and went back into the store. Ball estimated that she was in the store for approximately five minutes. She testified that her grandchildren were six and three years old respectively, and that they were wearing sweat suits, winter coats, boots, hats, and gloves. Ball addressed

4

the plastic bag covering her front-passenger window, explaining that the window would not roll all the way up and stopped approximately two to three inches from the top. When questioned about the incorrect information that she provided to Officer Hatcher, Ball denied attempting to conceal her identity from him, stating that she became nervous when speaking with him and confused her own social security number with those of her children.

{¶8} The trial court found Ball guilty of all offenses. At sentencing, defense counsel asked the trial court to merge the offenses of obstruction of official business and falsification. The trial court responded that "I will merge, though, I will merge the falsification and the obstruction, even though I'm not sure I have to, but I will do that." On the theft offense, the trial court imposed a sentence of 180 days in the Hamilton County Justice Center. It credited Ball with 45 days for time served and suspended the remaining 135 days. It additionally imposed a fine and costs, and placed her on one year of community control. For the offense of falsification, the trial court similarly imposed a sentence of 180 days, credited Ball with 45 days for time served and suspended the remaining 135 days, and additionally imposed costs and a period of community control. For the offense of obstruction of official business, the trial court imposed a sentence of 45 days, and credited Ball with 45 days for time served. And on the two child-endangerment offenses, the court imposed sentences of 180 days and a period of community control. It again credited Ball with 45 days for time served and suspended the remainder of the sentences.

*Child Endangerment*

{¶9}    In her first assignment of error, Ball argues that her convictions for child endangerment were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶10} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  In contrast, when considering a challenge to the weight of the evidence, the court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the court clearly lost its way and created a manifest miscarriage of justice.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶11} Ball was convicted of two counts of child endangerment in violation of R.C. 2919.22(A), which provides in relevant part that "[n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."  A "substantial risk" is defined in R.C. 2901.01(A)(8) as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."

{¶12} The necessary mens rea for a conviction for child endangerment under R.C. 2919.22(A) is recklessness.  *State v. McGee*, 79 Ohio St.3d 193, 195, 680 N.E.2d

975 (1997); *State v. Bush*, 2020-Ohio-772, 152 N.E.3d 892, ¶ 7 (1st Dist.). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶13} Ball contends that the state failed to establish that she recklessly created a substantial risk of harm to her grandchildren. As previously recognized by this court, "child endangerment cases are typically fact-specific." *Bush* at ¶ 8. In determining whether a parent acted recklessly, courts generally consider "the period of time the parent or guardian left the child unsupervised, the age of the child, whether the parent or guardian had any notice of the substantial risk (such as awareness of the child's propensity to engage in risky behavior), and any precautions the parent took to negate the risk." *Id.*

{¶14} Following our review of the record, we find sufficient evidence that Ball recklessly created a substantial risk of harm to her grandchildren. Ball elected to leave her three- and six-year-old grandchildren in a vehicle with a plastic bag over a window that did not close all the way in an extremely cold, subfreezing temperature, for a minimum of 15 minutes. The children were wearing winter coats, but not hats. There existed a strong possibility that the children would be harmed as a result of being left in a vehicle on such a cold day. Frost had already formed on the windows of the car by the time that the officer arrived. After leaving the children, Ball entered Target and attempted to steal two pairs of headphones. In doing so, Ball knowingly took the risk of getting caught and being detained for her actions, resulting in the children being left unattended in the car for a potentially unknown amount of time. Ball took the risk that she could have been put in a room by herself with no way to

alert anyone to the children in the car. And, even though she was able to tell the Target employee about the children, there was no guarantee of how quickly the police could arrive to extricate the children from the car. Ball's behavior demonstrated a heedless indifference to the consequences of her actions. *See* R.C. 2901.22(C).

{¶15} Ball argues that the facts of this case are analogous to those in *State v. Martin*, 134 Ohio App.3d 41, 730 N.E.2d 386 (1st Dist.1999), and that she did not create a substantial risk of harm to her grandchildren. In *Martin*, this court reversed a conviction for child endangerment where the defendant left her almost nine-year-old son sleeping in the backseat of a locked vehicle in a parking lot while she entered a nearby store to return a gift. In *Martin*, the child accidentally caused the car to change gears and roll out of the parking spot. We held that the state failed to establish that Martin acted recklessly, stating that while her actions may have been imprudent or even negligent, she had not perversely disregarded a known risk or acted with heedless indifference to the consequences. *Id.* at 43. We further held that the state failed to prove that Martin created a substantial risk of harm to her child. *Id.*

{¶16} We find *Martin* easily distinguishable from the case at bar. The child in *Martin* was nearly nine years old, whereas Ball's grandchildren were three and six years old. Further, extreme temperatures were not at issue in *Martin*, and, contrary to the facts before us, there was no evidence in *Martin* that the weather posed a risk to the child. Whereas Ball left her grandchildren unattended in a car for the purposes of committing a theft, Martin entered a store for the purposes of returning a gift and did not face the possibility of being detained for her actions.

**{¶17}** Because, when viewed in the light most favorable to the prosecution, the record established beyond a reasonable doubt that Ball recklessly created a substantial risk of harm to her grandchildren, we hold that her convictions for child endangerment were supported by sufficient evidence. *See Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus. And, as this was not the rare case in which the trial court, in resolving conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice, we further hold that Ball's convictions were not against the manifest weight of the evidence. *See Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

**{¶18}** Ball's first assignment of error is accordingly overruled.

### *Allied Offenses*

**{¶19}** In her second assignment of error, Ball argues that the trial court erred in imposing separate sentences for the offenses of obstructing official business and falsification because they are allied offenses of similar import.

**{¶20}** Under R.C. 2941.25, separate sentences may be imposed on a defendant whose conduct supports multiple offenses if the offenses were dissimilar in import, were committed separately, or were committed with a separate animus. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph three of the syllabus; *State v. Pettus*, 1st Dist. Hamilton No. C-170712, 2019-Ohio-2023, ¶ 74.

**{¶21}** The state concedes that these offenses are allied offenses of similar import and that, at sentencing, the trial court stated that it would merge these offenses. The trial court, however, failed to do so. We sustain Ball's assignment of error and hold that the trial court erred in imposing separate sentences for the

offenses of obstructing official business and falsification because they are allied offenses of similar import.

### *Conclusion*

{¶22} For the reasons set forth above, we vacate the sentences imposed for the offenses of obstructing official business and falsification, and remand for a new sentencing hearing on those offenses at which the state must elect which allied offense it will pursue. The appeal numbered C-200125 is dismissed. The judgments of the trial court are otherwise affirmed.

Judgments affirmed in C-200128 and C-200129; sentences vacated in part and cause remanded in C-200126 and C-200127; appeal dismissed in C-200125.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.