OPINION
{¶ 1} This is an accelerated calendar case submitted to this court on the record and the briefs of the parties. Appellant, Kelli A. Corrao ("Corrao"), appeals the judgment entered by the Willoughby Municipal Court. Corrao was convicted of one count of child endangering. For the reasons that follow, we reverse the judgment of the trial court.
 {¶ 2} Corrao has three children, Mario, Kevin, and Michael, who were eight, ten, and twelve years old, respectively, during the relevant times of this case. On March 24, 2002, one of the children called Thomas Blakemore ("Blakemore"), who is the grandfather of the children and the father of Corrao. The child asked Blakemore if the children could come over to his house. Blakemore indicated that it would be fine if the children visited. Thereafter, Corrao dropped the children off at Blakemore's residence.
 {¶ 3} Corrao did not attempt to retrieve her children from Blakemore's residence. She did not leave any food, clothing, or money with the children. The children had two phone numbers for Corrao, but attempts to reach her were unsuccessful.
 {¶ 4} The only attempted contact Corrao made was on March 29, 2002, when she called and left a threatening message on Blakemore's voicemail. Blakemore testified that Corrao was intoxicated when she left this message. On April 1, 2002, Blakemore filed a complaint with the police that Corrao had abandoned her children. Corrao was not heard from again until she was arrested on April 6, 2002, at 4:30 a.m. Officer Keith Mickovic testified that Corrao was intoxicated at the time of the arrest.
 {¶ 5} Blakemore testified that he cared for the children after Corrao left them at his house. He provided food and clothing for the children and made sure that they went to school.
 {¶ 6} As a result of her actions, Corrao was charged with child endangering in violation of Eastlake Municipal Code Section 537.07(a). Following a bench trial, Corrao was convicted of one count of child endangering. The judgment entry was amended, without objection, to state that Corrao was convicted of child endangering pursuant to R.C. 2919.22(A). Corrao has timely appealed this decision.
 {¶ 7} Corrao raises two assignments of error. Her first assignment of error is:
 {¶ 8} "The trial court erred to the prejudice of the defendant-appellant when it overruled defense counsel's motion for acquittal, made pursuant to Crim.R. 29."
 {¶ 9} A trial court shall grant a motion for acquittal if the evidence presented is insufficient to sustain a conviction.[1] To determine if there is sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."[2]
 {¶ 10} Corrao was convicted of endangering children pursuant to R.C. 2919.22(A), which states:
 {¶ 11} "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age *** shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection or support. *** ."
 {¶ 12} The culpable mental state for the crime of endangering children under R.C. 2919.22(A) is recklessness.[3] The Revised Code provides the following definition for recklessly:
 {¶ 13} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."[4]
 {¶ 14} The undisputed facts of this case reveal that Corrao was the parent of the children and that she violated a duty of care or support owed to the children. However, Corrao asserts that the prosecution did not meet its burden of showing that she recklessly created a substantial risk to the health or safety of her children. For the following reasons, we agree.
 {¶ 15} Corrao left the children with Blakemore, who stated he loved them and had cared for them on prior occasions. The trial court found that the children were cared for during the time in question, stating "I don't have any doubt that when they were with grandpa they weren't in danger of not being fed or clothed; he saw to it that they were being fed or clothed."
 {¶ 16} By definition, child endangering requires putting the child in danger. For example, a defendant's conviction for child endangering, as a result of leaving a seven-month-old baby in a room with a hot iron, was affirmed.[5] This court has upheld a child endangering conviction where an individual was baby-sitting a seventeen-month-old child, and the child ingested several adult strength Benadryl tablets.[6]
 {¶ 17} Appellee argues that Corrao's violation of her duty of care resulted in a substantial risk to the physical health of the children, because Blakemore did not have the authority to consent to medical treatment of the children. We disagree. A "`[s]ubstantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist."[7] In State v. Allen, the court held that mere speculation of what may have occurred is insufficient to show that there was a strong possibility that an event might occur.[8] There was insufficient evidence presented to show that there was a strong possibility that one of the children would suffer a detriment to his physical health as a result of their grandfather not having the authority to give medical consent.
 {¶ 18} In addition, appellee contends that the actions of Corrao put the children's mental heath at risk, as they did not know where their mother was or what she was doing. A review of the committee comment to R.C. 2919.22 reveals that the section does provide for a risk to mental health. The comment states, in part:
 {¶ 19} "This section is aimed at child neglect and abuse which causes or poses a serious risk to the mental or physical health or safety of the victim.
 {¶ 20} "The first part of the section defines the offense of neglect as the violation of a duty of care, protection, or support of a child which results in a substantial risk to his health or safety. Nonsupport as such is cognizable under section 2919.21 of the Revised Code, but if the failure to support a child results, for example, in the child suffering malnutrition or exposure, it is an offense under this section. ***
 {¶ 21} "The second part of the section deals with actual physical abuse of a child, whether through physical cruelty or through improper discipline or restraint, and regardless of by whom the offense is committed. Examples of violations include: Various actions resulting in the `battered child syndrome'; reducing a child to a state of frightened withdrawal to the point where he may become incapable of normal learning because of repeated punishment inflicted with little or no cause; and chaining a child to his bed or locking him in his room for prolonged periods so as to endanger his sanity or risk his arrested development."
 {¶ 22} Although the comment indicates that the section provides for a risk to both mental and physical health, it is apparent that mental health becomes much more relevant when dealing with the second part of the section, R.C. 2919.22(B), concerning abuse and excessive punishment. The comment suggests that neglect only becomes an offense under this section when it results in actual injury.
 {¶ 23} Our research has only uncovered one case in which an individual was convicted of child endangering because of a failure to act that resulted in a mental health injury.[9] In Elliott, the defendant killed the mother of his six-year-old son and left her body on the kitchen floor for the child to discover, when he knew the child was sleeping in an upstairs bedroom.[10] The case sub judice is readily distinguishable from the facts in Elliot, as the children were well cared for during their mother's absence, and were not subjected to an instance of horrific shock.
 {¶ 24} Corrao did not leave her children unattended. In fact, she left the children with a responsible adult, their grandfather. We cannot conclude that Corrao acted with heedless indifference and created a substantial risk to the health or safety of her children by leaving them with their sixty-three-year-old grandfather.
 {¶ 25} We do not condone the entirely inappropriate behavior of Corrao. Her conduct may very well have been criminal. It apparently violated R.C. 2919.21, which prohibits a parent from abandoning or failing to provide adequate support to her children.[11] However, there was insufficient evidence presented, even when viewed in a light most favorable to the prosecution, to sustain a conviction for child endangering under R.C. 2919.22(A). Thus, the trial court erred by denying Corrao's motion for acquittal.
 {¶ 26} Corrao's first assignment of error has merit.
 {¶ 27} Corrao's second assignment of error is:
 {¶ 28} "The finding that the defendant-appellant committed the act of endangering children was against the manifest weight of the evidence."
 {¶ 29} Having found merit in Corrao's first assignment of error regarding the insufficiency of the evidence presented, this assignment of error is moot.
 {¶ 30} The judgment of the trial court is reversed. As there was insufficient evidence presented, we are remanding this matter to the trial court to enter a judgment of acquittal.
DIANE V. GRENDELL, J., concurs.
JUDITH A. CHRISTLEY, J., concurs in judgment only.
[1] Crim.R. 29(A).
[2] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
[3] State v. McGee (1997), 79 Ohio St.3d 193, syllabus.
[4] R.C. 2901.22(C).
[5] See State v. Wright (1986), 31 Ohio App.3d 232.
[6] State v. Duffield (Apr. 19, 2002), 11th Dist. No. 2000-P-0112, 2002 Ohio App. LEXIS 1906.
[7] R.C. 2901.01.
[8] State v. Allen (2000), 140 Ohio App.3d 322, 325.
[9] See State v. Elliott (1995), 104 Ohio App.3d 812.
[10] Id.
[11] R.C. 2919.21(A)(2).